STATE OF SOUTH DAKOTA                          CIRCUIT COURT

COUNTY OF MINNEHAHA                        SECOND JUDICIAL CIRCUIT

---

Push Pedal Pull, Inc.,                              *49* CIV. 13-*00 /2 9 9*
formerly known as The R.D. Rogers Company,

        Plaintiff,

   vs.

Kent Casperson, individually, and
2nd Wind Exercise Equipment, Inc.,

        Defendants.

---

## SUMMONS

---

TO THE ABOVE-NAMED DEFENDANTS:

   You are hereby summoned and required to serve upon Steven D. Sandven Law Office PC, Plaintiff's attorney, whose address is 3600 South Westport Avenue, Suite 200, Sioux Falls, South Dakota 57106, an answer to the Complaint, which is herewith served upon you, within 30 days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

   Dated at Sioux Falls, South Dakota, this 25th day of April 2013.


                        STEVEN D. SANDVEN, Law Office PC

                        By:_____
                        STEVEN D. SANDVEN
                        STEVEN D. SANDVEN LAW OFFICE PC
                        3600 South Westport Ave., Suite 200
                        Sioux Falls SD 57106
                        (605) 332-4408
                        (605) 332-4496 (fax)
                        ssandvenlaw@aol.com

# EXHIBIT A

STATE OF SOUTH DAKOTA

COUNTY OF MINNEHAHA

CIRCUIT COURT

SECOND JUDICIAL CIRCUIT

Push Pedal Pull, Inc.,
formerly known as The R.D. Rogers Company,

Plaintiff,

vs.

Kent Casperson, individually, and
2nd Wind Exercise Equipment, Inc.,

Defendants.

Court File No. 49CIV 13-01299

## COMPLAINT

Comes Now, the Plaintiff Push Pedal Pull, Inc. (hereinafter "Plaintiff" or "Push Pedal Pull"), formerly known as The R.D. Rogers Company, by and through its attorney of record, Steven D. Sandven, and submits this Complaint against Defendants Kent Casperson and 2nd Wind Exercise Equipment, Inc. (collectively, the "Defendants") as follows:

### THE PARTIES

#### *PLAINTIFF*

1.      Plaintiff Push Pedal Pull, Inc. is a privately held South Dakota corporation.

2.      The R.D. Rogers Company was a South Dakota corporation engaged in the exercise equipment business at both a retail, wholesale and service level, and did business as Push Pedal Pull.

- 1 - b

3.    In February of 2012, The R.D. Rogers Company amended its articles of incorporation and changed its name to Push Pedal Pull, Inc.  Plaintiff is the successor to The R.D. Rogers Company.

4.    At all relevant times, Plaintiff has been engaged in the business of selling new and used exercise equipment through retail stores it operates.  Plaintiff also sells new and used or refurbished exercise equipment to businesses or  other commercial customers.  In addition, Plaintiff provides a service function to its commercial customers, and sells preventive maintenance contracts and on-site service to its customers.  Push Pedal Pull operates in more than eight states, including South Dakota, North Dakota, Minnesota, Oklahoma, Wisconsin, Iowa, Colorado, Tennessee, and Nebraska.

## *DEFENDANTS*

5.    Defendant Kent Casperson (hereinafter "Casperson") is a resident of Hennepin County, Minnesota.

6.    Defendant 2nd Wind Exercise Equipment, Inc. ("2nd Wind") is a competitor of Push Pedal Pull in the retail, commercial and service business involving exercise equipment, and operates in several of the states where Push Pedal Pull does business.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this case pursuant to SDCL 15-7-2, subsections (1) and (3), because Defendant 2nd Wind regularly transacts and does business in the State of South Dakota, has been registered to do business in South Dakota and operates a retail store located in Sioux Falls, South Dakota.

8.    Venue is appropriate in Minnehaha County, because Plaintiff and Defendant Casperson are party to an agreement dated January 15, 2001 which provides that Minnehaha

County is the exclusive forum for any disputes relating to the Agreement, Defendant 2nd Wind does business and resides in South Dakota and because the actions of both Defendants are intertwined with the violations of this same Agreement.

## FACTS COMMON TO ALL COUNTS

9.　　On information and belief, other than in Minnesota, 2nd Wind does not provide an in-house service capability in the other states it does business, and subcontracts service work to third parties.

10.　 Defendant Casperson became employed by The R.D. Rodgers Company as a manager in Fargo, North Dakota. In approximately 2007, Casperson relocated to Minnesota. At the time of his resignation in 2013, Casperson was the Director of Service for Push Pedal Pull and was based in Minnesota.

11.　　Casperson was a key management employee for Plaintiff, and was responsible for management of the overall service operations of Plaintiff's business. Approximately 26 employees in the service departments located in eight different states reported directly to Casperson. In addition to his management of the service operations, Casperson has had job responsibilities involving warehouse management, refurbishment of equipment, deliveries for a major supplier and sales of service and refurbished equipment to end users in 2012 and 2013.

12.　　As an important and key member of Plaintiff's management team, Casperson regularly attended management team meetings, where strategic planning, business assessments, financial results and trends, customer contract information and preferences, business updates, and business objectives were discussed and established by Plaintiff's management team.

- 3 - b

13.    As a long time trusted key management employee, Casperson was exposed to and had access to confidential business information and trade secrets of Plaintiff on a consistent basis for many years prior to and including 2013.

14.    Plaintiff has taken reasonable steps to protect its confidential information and trade secrets, which include requiring over 40 management employees to enter into confidentiality and non-competition agreements, limiting access to electronic documents to those with password protected computers, and by additionally detailing confidentiality obligations in its employee handbooks.

15.    On January 15, 2001, Casperson entered into an Agreement Concerning Trade Secrets and Non-Competition (the "2001 Agreement") with Plaintiff wherein Casperson agreed that he would not at any time, either directly or indirectly, use, divulge, or disclose any of the Company's business information, both during and after he left his employment with Plaintiff, including trade secrets or confidential information, to others.  The Agreement also provided that Casperson would not remove or retain any documents, copies, or recordings of Plaintiff's business information, including confidential information or trade secrets, and would not use or divulge such information in any way.  The 2001 Agreement is attached hereto as **Exhibit 1.**

16.    In order to protect Plaintiff's confidential information and trade secrets, and in consideration of the education and training provided to Casperson by Plaintiff, the 2001 Agreement also provided that for a period of two (2) years after Casperson left Plaintiff's employment, Casperson would not engage in any business in competition with Plaintiff within a radius of one hundred (100) miles of any retail store owned or operated by Plaintiff.

17.    On Sunday, March 3, 2013, Casperson submitted a letter which indicated he was resigning from his employment for Plaintiff, effective immediately.

- 4 - b

18.     Defendant Casperson's last day of employment was Friday, March 1, 2013.

19.     Defendant Casperson cleaned out his office over the weekend of March 2 and 3, 2013.

20.     During the course of his employment, Plaintiff supplied Casperson a computer, which was password-protected, and granted Casperson access to use such computer for pursuits which furthered the business objectives of Plaintiff.

21.     On information and belief, Defendant Casperson, in an effort to conceal and destroy evidence, deleted the e-mails on his computer that he was a party to while he worked for Plaintiff prior to March 4, 2013.

22.     In early January 2013, Casperson told Plaintiff's President that he had conversations in December and thereafter with a principal of 2nd Wind, that the 2nd Wind representative had asked him about Push Pedal Pull's business, and had tried to get business information from Casperson.

23.     In this conversation with Casperson in early January 2013, Plaintiff's President reminded Casperson that Push Pedal Pull's business information was private and confidential, and that Casperson needed to be very careful if he was called again by 2nd Wind.

24.     Beginning at least as early as February 2013, and continuing into March of 2013, Casperson systematically accessed, copied, and retained numerous documents and other business information belonging to Plaintiff which was confidential, including information which constituted protectable trade secrets of Plaintiff.

25.     On February 28, 2013, Defendant Casperson, through the use of his company-provided computer, remotely accessed Plaintiff's internal database of documents, including preventive maintenance service contracts between Plaintiff and certain customers in the Denver

Colorado territory, and internal documents involving "tracking" preventive maintenance contracts. Defendant Casperson made copies of this and other confidential business information.

26.    On or about March 1, 2013, at 8:40 p.m., on the last day of his work for Plaintiff (although he had not yet resigned), Defendant Casperson obtained a report that he had requested earlier that day entitled "SK Service by Sales Rep Summary – Kent", which detailed the net amounts and percentages to target sales of each of over 40 of Plaintiff's service representatives for the first two months of 2013 on a company-wide basis. This report would enable a competitor to identify the key service employees who were responsible for generating the most service-related revenue in the first two months of 2013, and the territories which generated such sales.

27.    Also on March 1, 2013, on the last day of his employment, Defendant Casperson, through the use of his company-provided computer, remotely accessed Plaintiff's internal database of documents, including preventive maintenance service contracts between Plaintiff and customers in the Sioux Falls, Des Moines, and Oklahoma City territories, and internal documents involving "tracking" preventive maintenance contracts, and made copies of this and other confidential business information.

28.    In addition, on March 1, 2013, Defendant Casperson, through the use of his company-provided computer, remotely accessed the internal database of documents maintained by Plaintiff, and copied quotes for 2012 and 2013 relating to Plaintiff's business, and made copies of this and other confidential business information. This information would enable a competitor to know, among other things, the specific terms of bids made by Plaintiff to obtain new business, any and all of which would provide a significant and unfair advantage for a

competitor who could use such information to make a timely bid to undercut the existing contract price.

29.    On Saturday, March 2, 2013, the day before Defendant Casperson tendered his resignation, he continued his misappropriation of Plaintiff's confidential business information, through the company-provided computer, when he remotely accessed Plaintiff's internal database of documents, and copied confidential business information, including but not limited to preventive maintenance agreements and tracking spreadsheets, diagnostic service documents, refurbishment, service and delivery documentation and summaries, and other internal business documents.

30.    The customer information involving preventive maintenance agreements and tracking documents copied by Casperson on February 28, 2013, on March 1, 2013, and on March 2, 2013, just before he submitted his resignation, would enable a competitor to know, among other things, the contract terms, the expiration of the contract, who to contact, the customer contact information, and what pricing and discounts were in place, all of which would provide a significant and unfair advantage for a competitor who could use such information to make a timely bid to undercut the existing contract price.

31.    In addition to the copying of the customer-related documents set forth above, on Saturday, March 2, 2013, Defendant Casperson copied, among other internal documents, current company-wide financial and business information, including but not limited to sales projections, service break-even spread sheets by territory or store, sales and commission reports of service representatives for 2012, sales summaries, financial statements, service employee records (including employee evaluations, job descriptions and payroll records) and management meeting

- 7 - ᵇ

minutes which provided current updates on Plaintiff's business plans, strategies and potential business.

32.     The financial and other business information copied by Defendant Casperson on March 2, 2013, just before he submitted his resignation, would enable a competitor, among other things, to determine the financial capabilities and condition of Plaintiff, the specific financial information to determine financial break-even levels for the service segment throughout Plaintiff's territories, the viability of an in-house service segment in the exercise equipment market on a multi-state basis, the extent of Plaintiff's sales, which territories Plaintiff operated in generated what level of profitability, important background on service employees and their compensation, Plaintiff's current sales prospects, and the status of potential deals that were ongoing in recent months. This business and financial information would provide a competitor with an unfair and significant competitive advantage.

33.     Defendant Casperson engaged in some of the copying described herein through the use of at least two portable thumb drive devices.

34.     When Defendant Casperson engaged in the copying and retention of Plaintiff's confidential information as described herein, he had already decided to leave his employment with Plaintiff and to begin employment at 2nd Wind in competition with Plaintiff.

35.     Defendant 2nd Wind encouraged, participated, and conspired with Defendant Casperson to acquire the confidential business information Casperson copied as set forth herein.

36.     After his resignation, Defendant Casperson informed a management employee of Plaintiff that he would be leaving Plaintiff to go to work for his church.

37.     After his resignation on March 3, 2013, in March of 2013, Defendant Casperson began employment at 2nd Wind, in a similar position as the position he had with Plaintiff.

- 8 - ɓ

38.    Prior to Casperson's employment at 2nd Wind, Defendant 2nd Wind was provided with or made aware of the 2001 Agreement or, alternatively, Casperson's non-competition restrictions, including the obligations not to use or divulge confidential information or trade secrets.

39.    Based on 2nd Wind's knowledge of the 2001 Agreement and the noncompetition restrictions, 2nd Wind assigned Casperson to an office in Wisconsin, in order to create the appearance that Casperson was not in violation of his non-competition obligations.

40.    Defendant Casperson has directly or indirectly engaged in competition, either independently or as an employee or associate of 2nd Wind, within 100 miles of Plaintiff's retail stores.

41.    On April 4, 2013, Plaintiff, through its attorneys, wrote to Defendant Casperson to remind him of his confidentiality and non-competition obligations pursuant to the 2001 Agreement, and directed Casperson to return all business records (and all copies) relating to Plaintiff's business to Plaintiff on or before April 15, 2013.

42.    Despite full knowledge of his extensive copying of Plaintiff's confidential business information, and retention of that same confidential business information, Defendant Casperson has willfully refused to return any documents or information.

43.    Plaintiff does not provide the financial, business or customer information copied and retained by Defendant Casperson to the public or to its competitors.

44.    Plaintiff invested considerable sums of time, skill, money and effort in developing the business information which was taken by Defendants.

45.    The business information of Plaintiff which Defendant Casperson accessed, copied, and retained as described herein derived independent economic value from not being

- 9 -

generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

46.    The business information of Plaintiff which Defendant Casperson accessed, copied, and retained as described herein were the subjects of reasonable efforts to maintain their secrecy on the part of Plaintiff.

47.    The business information of Plaintiff which Defendant Casperson accessed, copied and retained as described herein are trade secrets within the meaning of Minn. Stat. §325C.01, subd. 5 and S.D.C.L.§37-29-1.

48.    Defendant Casperson, with the knowledge or participation of 2nd Wind, or for the benefit of 2nd Wind, engaged in misappropriation of the trade secrets of Plaintiff which were: (i) acquired by Defendants with knowledge or under circumstances where they had reason to know that the trade secrets were acquired by improper means, or alternatively, (ii) were disclosed by Casperson or used by Defendants without the consent of Plaintiff when improper means were used to acquire the information, or where Defendants knew or had reason to know the trade secrets were acquired through improper means, or while under a duty to maintain its secrecy, or through breach of a duty to maintain its secrecy, all within the meaning of, and as set forth in, Minn. Stat. §325C.01 subd. 3. and S.D.C.L. §37-12-1.

49.    Defendants' acts and omissions as described herein were a willful and malicious misappropriation or, alternatively, were undertaken with a deliberate disregard for the rights of others.

- COUNT ONE -
**Misappropriation of Trade Secrets**
(Casperson and 2nd Wind)

50.   Plaintiff realleges the allegations of paragraphs 1 through 49 of this Complaint as if fully set forth herein

51.   Defendants, by the acts and omissions described herein, willfully misappropriated trade secrets of Plaintiff through improper means or, alternatively, have used or disclosed such trade secrets without the consent of Plaintiff while Casperson was under a duty to maintain their secrecy.

52.   Defendants willfully and maliciously misappropriated Plaintiff's trade secrets and are entitled to punitive damages under S.D.C.L. §37-29-3.

53.   Defendant Casperson has disclosed such trade secrets in connection with his competitive activities or, alternatively, the circumstances reflect a threat of misappropriation.

54.   Defendants have used such trade secrets in connection with their competitive activities or, alternatively, the circumstances reflect a threat of misappropriation.

55.   Defendants' acts or omissions as described herein violate the Minnesota Trade Secrets Act, Minn. Stat. §325C.01, et seq.

56.   Defendants' acts or omissions as described herein violate the South Dakota Trade Secrets Act, S.D.C.L. 37-29-1 et seq.

57.   Defendants' acts or omissions as described herein have caused Plaintiff to sustain a financial loss in excess of Fifty Thousand Dollars ($50,000.00).

58.   Alternatively, Defendants' acts or omissions as described herein have unjustly enriched Defendants.

59.   As a direct result of Defendants' violations of the Minnesota Trade Secrets Act or, alternatively, the South Dakota Trade Secrets Act, Plaintiff is entitled to an award of damages in

excess of Fifty Thousand Dollars ($50,000.00), and an award of reasonable attorneys' fees in connection with Defendants' willful and malicious misappropriation.

60.     Defendants' actions constitute both actual, or alternatively, threatened misappropriation of trade secrets that justify both preliminary and permanent injunctive relief.

61.     Under the circumstances, the disclosure of the trade secrets wrongfully acquired by Defendants is inevitable.

62.     Plaintiff is, therefore, entitled to preliminary and permanent injunctive relief against Defendants, including orders directing that Defendants return to Plaintiff all confidential and trade secret information wrongfully taken, that all persons acting in concert with Defendants cease all use of such confidential and trade secret information wrongfully taken, and for other appropriate equitable relief.

### - COUNT TWO -
### Breach of Fiduciary Duty
### (Casperson)

63.     Plaintiff realleges the allegations of paragraphs 1 through 62 of this Complaint as if fully set forth herein.

64.     While employed for Plaintiff, Casperson had a confidential relationship and owed fiduciary duties to Plaintiff.

65.     Prior to his resignation as an employee of Plaintiff on March 3, 2013, Defendant Casperson owed a fiduciary duty of loyalty to Plaintiff to refrain from taking Plaintiff's confidential business information and trade secrets, and to refrain from any use, retention or disclosure of such information, as well as a duty not to compete while still employed, and to refrain from deleting Plaintiff's confidential information to conceal his disloyal activity, or to take other actions to Plaintiff's detriment.

- 12 -

66.     Defendant Casperson breached his fiduciary duties by taking Plaintiff's electronic files as described herein, and by deleting electronic files prior to his resignation, and by competing with Plaintiff, all at a time when he had already planned to compete and leave Plaintiff's employment.

67.     As a direct result of Defendants' acts or omissions as described herein, Plaintiff has been damaged, and Defendant Casperson has gained and benefitted, and will continue to gain and benefit from his breach of fiduciary duty.

68.     Defendant Casperson breached fiduciary duties he owed to his employer prior to the termination of his employment.

69.     As a result of Defendant Casperson's breach, Plaintiff has been damaged in an amount in excess of Fifty Thousand Dollars ($50,000.00).

70.     Defendant Casperson's breach of trust and breach of his fiduciary duty, including the duty of loyalty, has caused Plaintiff to suffer irreparable injury for which damages are not a fully adequate remedy at law.   Plaintiff is, therefore, entitled to preliminary and permanent injunctive relief against Defendant Casperson, including orders directing that Defendant Casperson return to Plaintiff all confidential and trade secret information wrongfully taken, and that all persons acting in concert with Defendant cease all use of such confidential and trade secret information wrongfully taken, and for other appropriate equitable relief.

## - COUNT THREE -
## Breach of Contract
## (Casperson)

71.     Plaintiff realleges the allegations of paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72.     Defendant Casperson breached the 2001 Agreement by misappropriating Plaintiff's confidential information prior to the resignation of his employment and, in addition, by retaining such information after his resignation.

73.     Plaintiff made a demand for the return of the business information Casperson accessed, downloaded, copied, and retained, but Casperson has refused to return any of the confidential business information and trade secrets he copied and took in 2013.

74.     Alternatively, Defendant Casperson has breached the 2001 Agreement by engaging in competition with Plaintiff after the termination of his employment within 100 miles of any retail store owned or operated by Plaintiff.

75.     As a direct result of defendant Casperson's breach, Plaintiff has been damaged in an amount in excess of Fifty Thousand Dollars ($50,000.00).

76.     Alternatively, as Defendant Casperson agreed in the 2001 Agreement, any "violation of this Agreement shall entitle Employer to injunctive relief." Defendant Casperson's acts or omissions as described herein have caused Plaintiff to suffer irreparable injury and financial losses for which monetary damages are not a fully adequate remedy at law. Plaintiff is, therefore, entitled to preliminary and permanent injunctive relief against Defendant Casperson, which enjoins him from violating his agreement not to compete, as well as his agreement not to retain, disclose or use the confidential business information, trade secrets, or other documents as set forth in the 2001 Agreement.

### - COUNT FOUR -
### Unjust Enrichment
### (Casperson and 2nd Wind)

77.     Plaintiff realleges the allegations of paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78.     Defendants' acts or omissions as described herein in accessing, downloading, copying, taking, and using Plaintiff's confidential business information and trade secrets just prior to Plaintiff's resignation for the purpose of competing with plaintiff was wrongful and not justified.

79.     Defendant Casperson was not entitled to access, use, or disclose Plaintiff's confidential business information and/or trade secrets.

80.     Defendants have benefitted from the wrongful acts or omissions described herein.

81.     As a result of such conduct, Defendants have been unjustly enriched to Plaintiff's detriment.

82.     Defendants' unjust enrichment exceeds the sum of Fifty Thousand Dollars ($50,000.00).

- COUNT FIVE-
**Violations of Computer Fraud and Abuse Act**
**(Casperson)**

83.     Plaintiff realleges the allegations of paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84.     Defendant Casperson's actions in accessing, downloading, copying and retaining the business information identified herein through the use of Plaintiff's computer system, and a computer owned by Plaintiff, for a reason he knew was not authorized and during a time in which plaintiff would not have provided authorization had it known of Casperson's intent to resign effective immediately on March 3rd and compete against Plaintiff, constitutes a violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030(a) and (g).

85.     Defendant Casperson's acts and omissions as described herein were without Plaintiff's authorization, or exceeded any authorization or permission to use Plaintiff's computer

- 15 -

and computer network, given Casperson's decision to resign within a matter of hours and compete with Plaintiff.

86.     Defendant Casperson's actions as described herein were intentional, were done with the intent to defraud Plaintiff, and his access to Plaintiff's protected computer system caused loss to Plaintiff in excess of Five Thousand Dollars ($5,000.00), including but not limited to the cost of responding to the offense, and other costs and damages occurring in less than a one-year period of time.

87.     Plaintiff's computer system is used extensively in interstate commerce in connection with Plaintiff's business in the sales of exercise equipment in an eight state territory.

88.     Defendant Casperson's acts and omissions as described herein allowed Casperson to obtain business information which is of great value to Plaintiff, as such information is important in connection with Plaintiff's dealings with its customers and potential customers and formulating its business plans, and amounts to trade secrets that can be used to the disadvantage of Plaintiff by those in competition.

89.     Defendant Casperson's violation of the Computer Fraud and Abuse Act caused Plaintiff to sustain damages in excess of Five Thousand Dollars ($5,000.00).

### - COUNT SIX -
### Interference With Contract
### (2nd Wind)

90.     Plaintiff realleges the allegations of paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91.     Plaintiff and Defendant Casperson are parties to the 2001 Agreement.

92.     By hiring Casperson and allowing him to compete in violation of the 2001 Agreement, and by acquiring or using the confidential business information and trade secrets

- 16 - ♭

taken by Casperson, 2nd Wind interfered with Plaintiff's contract as memorialized in the 2001 Agreement.

93.    Defendant 2nd Wind used malicious and wrongful means and improper conduct in its interference with the 2001 Agreement.

94.    Defendant 2nd Wind's conduct was not justified.

95.    Defendant 2nd Wind's interference with the 2001 Agreement directly caused damage to Plaintiff.

96.    As a direct result of defendant 2nd Wind's interference with contract, Plaintiff has been damaged in an amount in excess of Fifty Thousand Dollars ($50,000.00).

## COUNT SEVEN
### Aiding and Abetting a Breach of Fiduciary Duty
### (2nd Wind)

97.    Plaintiff realleges the allegations of paragraphs 1 through 96 of this Complaint as if fully set forth herein.

98.    Defendant Casperson breached a fiduciary duty owed to Plaintiff as set forth herein.

99.    Defendant 2nd Wind had knowledge of Casperson's breach.

100.   Defendant 2nd Wind provided substantial assistance to Casperson in connection with Casperson's breach.

101.   Defendant 2nd Wind is liable to Plaintiff for aiding and abetting Casperson's breach of fiduciary duty.

102.   Defendant 2nd Wind's aiding and abetting a breach of fiduciary duty by Casperson caused damage to 2nd Wind.  As a direct result of 2nd Wind's aiding and abetting a breach of

- 17 -

fiduciary duty, Plaintiff has been damaged in an amount in excess of Fifty Thousand Dollars ($50,000.00).

## COUNT EIGHT
### Unfair Competition

103.   Plaintiff realleges the allegations of paragraphs 1 through 102 of this Complaint as if fully set forth herein.

104.   Defendants have and continue to engage in unfair competition.

105.   As a direct result of defendants' unfair competition, Plaintiff has been damaged in an amount in excess of Fifty Thousand Dollars ($50,000.00).

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment in its favor, on the merits, and to:

(a)   restrain and enjoin Casperson, 2nd Wind, and all those persons acting in concert or participation with them, on a temporary and permanent basis:

1)   from using or disclosing Plaintiff's confidential information and trade secrets in any way in competition with Plaintiff;

2)   requiring Defendants to return all confidential or proprietary documents, any documents incorporating such documents or portions thereof, all hard copies and electronic copies of such documents, and any devices, including but not limited to thumb drives, discs, or other devices which have at any time recorded or maintained any documents from Plaintiff;

3)   with respect to those customers or potential customers of Plaintiff who were identified in the confidential information misappropriated or copied by Defendant Casperson, enjoining Defendants from soliciting or attempting to cause any such actual or potential customers of Plaintiff identified in such information from changing their business relationship to any vendor (including 2nd Wind) other than Push Pedal Pull, for a time period of one year after the expiration of any customer agreements with Plaintiff;

4)   enjoining Casperson from being employed at 2nd Wind for the duration of his two-year non-competition restriction as set forth in the 2001 Agreement;

- 18 -

5)      enjoining 2nd Wind from executing any plans or changes to the territories it presently does business in for a reasonable time to prevent unjust enrichment;

6)      enjoining Defendants from hiring, soliciting or attempting to induce any of Plaintiff's employees to come to work for 2nd Wind, for one year from the termination of Casperson's employment; and

7)      for such other relief as is just or equitable to redress Defendants' violations;

(b)      to award Plaintiff damages in excess of Fifty Thousand Dollars ($50,000.00)

against both Defendants Casperson and 2nd Wind;

(c)      to award Plaintiff punitive damages as allowed by law;

(d)      to award Plaintiff his costs and reasonable attorneys' fees as allowed by the

Minnesota Trade Secrets Act, the South Dakota Trade Secrets Act, and under the 2001

Agreement; and

(d)      and for such other relief as allowed by law.


STEVEN D. SANDVEN, Law Office PC


Dated:  April 25, 2013.          By: _____
                                STEVEN D. SANDVEN
                                STEVEN D. SANDVEN LAW OFFICE PC
                                3600 South Westport Ave., Suite 200
                                Sioux Falls SD 57106
                                (605) 332-4408
                                ssandvenlaw@aol.com

# AGREEMENT CONCERNING TRADE SECRETS AND NON-COMPETITION

THIS AGREEMENT is made and entered into as of the 15th day of January, 2001, by and between THE R.D. ROGERS COMPANY, doing business as Push Pedal Pull ("Employer"), and Kent Casperson ("Employee").

## RECITALS

Employee is currently employed by or proposes to commence employment with Employer. As a condition of continued or commencing employment with Employer, and for the purpose of inducing Employer to employ Employee, the parties desire to enter into this Agreement.

NOW, THEREFORE, for $10.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby conclusively acknowledged, the parties agree as follows:

1. <u>Trade Secrets.</u>  Employee acknowledges that in the course of employment, Employee will acquire confidential information of a special and unique nature and value relating to Employer's business. Such information shall be considered a trade secret owned by the Employer and shall include, but is not limited to, names and addresses of customers and potential customers, customer purchases and requirements, identity of customers' key employees and contact persons, information concerning Employer's systems, policies, methods of operation, procedures, manuals, pricing and all other non-public information acquired by Employee as a result of or during the course of employment. Employer shall retain ownership of all rights to all materials disclosed to Employee, except materials which are readily available to the general public. Reuse of the materials or concepts is prohibited without the prior written consent of Employer. Employee agrees that all such information acquired during the course of employment, whether such information is communicated in written or verbal form, and whether such information is in recorded or unrecorded form, constitute trade secrets of Employer.

   Employee agrees that Employee shall not at any time or in any manner, either directly or indirectly, divulge or disclose Employer's trade secrets to any other person or entity. In addition, Employee agrees that Employee shall not use such trade secrets in competition with Employer or for the gain or benefit of Employee or any other person or company. It is expressly agreed and understood that the obligations of Employee under this paragraph shall survive the termination of this Agreement.

   Following termination of employment, Employee shall not remove or retain any document, copy of document or any other recording, in any type or form, relating to said trade secrets. Employee shall not utilize or divulge said trade secrets to any other person or company, regardless of whether such knowledge or information is in recorded form or otherwise.

**EXHIBIT 1**

2. Agreement Not to Compete. For the consideration recited above and in further consideration of Employer providing education and training to Employee, and making Employer's trade secrets available to Employee, Employee agrees not to engage directly or indirectly, either personally or as an employee, associate, partner, or otherwise, or by means of any corporation or other legal entity, or otherwise, in any business in competition with Employer during the course of employment and for a period of two (2) years from the date of the termination of employment, within a radius of one hundred (100) miles of any retail store owned or operated by Employer on the date of termination of employment or within two (2) years following such date. The term "termination" shall include any severance of the employment relationship, regardless of which party initiates or causes such severance.

The parties have attempted to limit Employee's right to compete only to the extent necessary to protect Employer from unfair competition. The parties recognize, however, that reasonable people may differ in making such a determination. Employee acknowledges that he will be able to earn a livelihood without violating the foregoing restrictions and that his ability to earn a livelihood without violating such restrictions is a material condition to his execution of this Agreement with Employer.

3. Remedies for Breach of Trade Secrets and Non-Competition Agreement. Employee expressly agrees that Employee's violation of this Agreement shall entitle Employer to injunctive relief. Employer shall be entitled to any and all further or other rights and remedies available at law or in equity. If a legal action is instituted to enforce the provisions of this Agreement, or any part of it, the prevailing party shall be entitled to recovery of reasonable attorneys' fees and costs, including discovery costs, as determined by the Court.

4. Choice of Law/Forum. The parties agree that this contract is governed by the laws of the State of South Dakota without regard to its choice of law provisions and that the state circuit court situated in Minnehaha County, South Dakota, shall be the exclusive jurisdiction of any disputes relating to this Agreement.

5. General Matters.

   (a) The parties acknowledge that their employment relationship is an "at will" relationship which either party may terminate at any time with or without cause, except to the extent the parties have otherwise specifically agreed in writing pursuant to a formal contract executed by other parties.

   (b) Unless in conflict with the terms hereof, any other employment agreements or other formal contracts signed by both parties (whether before or after the date hereof) shall remain in full force and effect.

   (c) This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, the parties have entered into this Agreement as of the date set forth above.

THE R.D. ROGERS COMPANY

Employes

By KENT CASPERSON

C.O.O.   Its   KC

Kent Casperson

22b